UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JACQUELINE L. HERRITT,            :        CIVIL NO. **1:05-CV-0010**
                                  :
          Plaintiff               :        (Judge Conner)
                                  :
      v.                          :        (Magistrate Judge Smyser)
                                  :
JO ANNE B. BARNHART,              :
COMMISSIONER OF SOCIAL            :
SECURITY ADMINISTRATION,          :
                                  :
          Defendant               :

_____

## REPORT AND RECOMMENDATION


### Statement of Facts:


     The plaintiff has brought this civil action under the
authority of 42 U.S.C. § 405(g) to obtain judicial review of
the decision of the Commissioner of Social Security denying the
plaintiff's application for Supplemental Security Income (SSI).


     On April 18, 2002,the plaintiff, Jacqueline L. Herritt,
applied for SSI claiming that she became disabled on
September 21, 2001, as a result of back problems involving a
ruptured disc and stomach/abdominal problems. (Tr. 89, 100).
Her claim was denied initially and on reconsideration. The
plaintiff filed a request for a hearing, and a hearing was held
before an Administrative Law Judge (ALJ) on June 26, 2003.
Tr. 34-71. At this hearing, the plaintiff, the plaintiff's
sister, and a vocational expert testified. The plaintiff was
represented by a paralegal from North Penn Legal Services, an

organization that provides legal assistance in civil matters to low income individuals (Tr. 16-17, 22).

The medical evidence of record shows that the plaintiff has undergone at least thirteen abdominal surgeries. Some of these surgeries are documented in the present record, including the last surgery which was performed in 1999. (Tr. 174-291, Doc.12, p.3). There are additional surgeries allegedly documented in the plaintiff's prior application for benefits. (Doc.11, p.4).

A CT scan of the plaintiff's abdomen performed on November 15, 2002, revealed a "somewhat prominent head and uncinate[1] process of the pancreas" as well as cysts and adenomas[2]. (Tr. 204.)

At the Commissioner's request, the plaintiff was examined by Frank L. Conly, M.D., on June 25, 2002. Dr. Conly had been the plaintiff's treating physician in the past. (Tr. 295, Doc.11, p.8; Doc.12, p.4). Dr. Conly opined that the plaintiff suffers from chronic cervical and low back pain and has a

---

[1]

Uncinate: Hook-like or hook-shaped. Also a process of the pancreas or of a vertebra. *Steadman's Medical Dictionary*, 27th Ed., p.1906 (2000).

[2]

Adenoma: A neoplasm in which tumor cells form gland or gland-like structures. *Steadman's Medical Dictionary*, 27th Ed., p.24 (2000).

history of abdominal pain and swelling of an undetermined etiology. (Tr. 146.)  He noted that the plaintiff shifted from a sitting to standing position several times during the examination due to back pain.

Dr. Conly noted tenderness from L2-S1 as well as in the para-cervical area with some stiffness and that the plaintiff was unable to lay down flat on the examination table to do a straight leg raise test (SLR) due to back pain. Tr. 145.

In a residual Functional Capacity (RFC) assessment, Dr. Conly opined that the plaintiff could occasionally lift and/or carry two to three pounds, nothing frequently; she could walk a cumulative of one hour in an eight-hour workday, sit less than six hours and no more than twenty minutes at a time; she was restricted in her ability to push and pull due to "severe low back pain." (Tr. 149, Doc.11, p.2-3). Dr. Conly further opined that the plaintiff could occasionally bend and balance but could never kneel, stoop, crouch or climb. (Tr. 150.)  Dr. Conly documented his observations of the plaintiff's range of motion during the physical examination on a "Range of Motion Chart" (Tr. 147-148.)

An MRI of the plaintiff's spine performed on June 23, 2003, showed scoliosis, disc degeneration at L2 to S1 and

3

bulging at L4-L5, thickening of the ligament of flavum, and
facet joint arthropathy at L4-L5. (Tr. 292.)

On August 8, 2002, a non-examining state agency physician
completed a residual functional capacity assessment and opined
that the plaintiff could lift and/or carry fifty pounds
occasionally and twenty-five pounds frequently, stand/walk
and/or sit for six hours in an eight hour work day, without any
push/pull limitations. (Tr. 151-158.)

A state agency physician completed a Psychiatric Review
Technique Form and opined that the plaintiff did not have a
severe mental impairment or limitations in performing daily
activities but had mild limitations in maintaining
concentration, persistence and pace. (Tr. 169).

In her testimony, the plaintiff recounted her work
history, her complaints and her medications. She had relevant
work experience as a bartender, assembly line worker building
carburetors, factory worker, baby-sitter and house cleaner.
(Tr. 41.)  She complained of experiencing back pain as a result
of a work injury for which she received Workman's Compensation
for a period of four years until she settled the claim for a
lump sum. (Tr. 42.)  She stated that she tried to return to
work after she settled her Workman's Compensation claim but was
unable to handle her work duties due to back pain. (Tr. 45.)

The plaintiff lives with her seven (7) year-old grandchild, who has a developmental disability and receives SSI benefits. (Tr. 42-43.) She takes several medications including Loracet every four hours and a muscle relaxer to deal with her back pain. (Tr. 44.)  She also takes Lorazepam four times per day to treat her anxiety. (Tr. 44.)  She stated that her pain medication alleviates the pain enough to allow her to cook and do light household duties. (Tr. 44.)  As a side effect of her medications she started to feel fatigued. (Tr. 50.)

The plaintiff also complained of abdominal pains. She has had between thirteen and fifteen abdominal surgeries.[3]  As a result, she sometimes feels like her stomach "just split right in half from the belly button down" and "swells up like a balloon."  (Tr. 44-45.)

She has been placed on a very restricted diet. (Tr. 57).  Treating physicians had expressed to the plaintiff their inability to further treat her abdominal problems other than with pain medication and had advised her against having further surgical procedures performed. (Tr. 53-54.)

---

[3]

The plaintiff had her gall bladder and several adhesions removed, a tubal ligation, a hysterectomy, surgery to repair ruptured incisions from a previous surgery, bowel surgery, abdominal surgery due to trauma suffered during an automobile accident, surgery to remove cysts with endometriosis and other surgeries allegedly described in the plaintiff's medical files from her prior SSI application. (Tr. 51-53.)

The plaintiff also stated that she had a lifelong asthma condition but that she "kind of outgrew" it and only needs to use an inhaler about once a year. (Tr. 51.)  The plaintiff described her level of activity on a typical day.  She stated that she sits in a hard chair in her kitchen to watch the children play outside. (Tr. 45-46.)  She also sits on her couch to play with her grandson and to help him with his school work. She is able to  prepare light meals daily and a more elaborate meal approximately once a week. (Tr. 46.)  She is also able to drive, unless she is in pain, in which case her sister drives her to her doctor's appointments. (Tr. 47.)  She can carry up to fourteen pounds with difficulty. (Tr. 47.)  She stated that she has difficulty walking and can sit for no more than twenty to thirty minutes at a time, and that her legs tingle and get numb when she stands.  (Tr. 47-48.)

The plaintiff also testified that her sister, who lives near her, helps her with her grandchild, assists her with the house cleaning and that her neighbors help her carry heavy items. (Tr. 48, 58.)

The plaintiff further stated that since her back pain became disabling, she is no longer able to enjoy her hobbies which consisted of sewing, gardening, and playing football with the kids from her neighborhood. (Tr. 46, 54, 58.)

The plaintiff's sister, Diane M. Horning, a certified nurses' aide, testified that she visits her sister daily. She reported that she receives phone calls from the plaintiff's grandson at least once every two weeks telling her that "grammy can't get up" or "grammy is not feeling good."  (Tr. 60.) Although Ms. Horning had repeatedly urged the plaintiff to call an ambulance, the plaintiff always refused to do so or to request stronger pain medication because she needs to stay home caring for her grandchild. (Tr. 60, 61.)

Ms. Horning also stated that she has accompanied the plaintiff to several doctor's appointments and had been present when the physicians had informed the plaintiff that her abdominal pain was probably due to her multiple surgeries and that there was nothing else they could do to help her, except to prescribe pain medication. (Tr. 61-62.)

Additionally, Ms. Horning testified that the plaintiff had diligently tried to resolve her medical condition by undergoing numerous diagnostic tests and surgeries, and has been very compliant with her medication regimen.  (Tr. 62.) She stated that the plaintiff used to be a strong woman who chopped her own wood, tended to her garden and sewed blankets but can no longer perform any of those activities.  (Tr. 62.)

7

At the hearing, the plaintiff's representative requested that medical records from the plaintiff's previous SSI application be admitted into evidence. Apparently, the plaintiff had informed a member of the ALJ's staff that there was important medical evidence in the file of her previous application that she wanted the ALJ to consider.  She had asked whether she was required to resubmit the medical evidence contained in those files but was instructed that since she had included that evidence in a prior application, the office had access to them and it was not necessary for the plaintiff to resubmit the documents. (Tr. 38-39.)

However, at the hearing, the ALJ did not have the documents from the plaintiff's prior SSI application. The ALJ assured the plaintiff that he would request the file and would keep the record open until the medical evidence was received. The plaintiff offered to ask her doctor for another copy of her old medical records if that would expedite the decision-making process (Tr. 70).   The ALJ assured the plaintiff had he would request the file and that "actually getting the prior file generally takes less time than getting the medical evidence [from the doctors] because the warehouse is a short distance from the hearing office..." and that "it takes only a couple of days until we get the file..."  (Tr. 69.)

The ALJ stated that when a claimant had filed a prior application, there is a notation on the case's cover sheet but that such notation did not appear on the plaintiff's file. (Tr. 39.)  (However, there is a notation on the initial field office intake form which denotes that the folder containing the documentation from the plaintiff's prior application had been destroyed. (Tr. 95).

During the vocational expert's testimony, the ALJ asked whether there were jobs that a hypothetical person, with the plaintiff's vocational profile and education, able to carry/lift no more than ten pounds occasionally and two to three pounds regularly, to sit/stand every thirty to sixty minutes, and stand/walk for twenty to thirty minutes, could perform. The hypothetical person could understand simple job instructions but suffers from pain for which she takes medication that impairs her ability to sustain concentration.

The vocational expert responded that such a person could not perform the plaintiff's past relevant work but could perform other jobs such as ticket collector, self-service cashier, telemarketer, and hand sorter and that those jobs exist in significant numbers in the economy. (Tr. 66-67.)

On September 18, 2003, the ALJ issued a decision denying the plaintiff benefits. (Tr. 18-28.)  The plaintiff requested

review of the ALJ's decision to the Appeals Council. (Tr. 16.)
The Appeals Council denied the plaintiff's request for review.
(Tr. 10-13.) Thus, the ALJ's decision stood as the final
decision of the Commissioner.

The plaintiff filed her complaint with this Court on
January 3, 2005. The defendant filed an answer to the complaint
and a copy of the administrative record on March 10, 2005.
Pursuant to Local Rules 83.40.4 and 83.40.5., the plaintiff
filed her brief on May 19, 2005, and the defendant filed her
brief on June 6, 2005. No reply brief has been filed.

**Discussion:**

In her brief, the plaintiff argues that the ALJ
erroneously rejected both Dr. Conly's residual functional
capacities assessment and her testimony regarding her symptoms
and limitations.  Additionally, the plaintiff challenges the
hypothetical question that the ALJ posed to the VE. (Doc.11,
p.6).  Although not raised by the plaintiff in her appeal, we
must note our concern with the ALJ's failure to obtain the
medical records submitted as part of the plaintiff's previous
application for benefits. We must determine whether the ALJ
erred when he closed the record without having obtained the

medical records from the plaintiff's previous SSI application
and summarily deemed said records to be irrelevant.

We review the Commissioner's decision to determine
whether it is supported by substantial evidence. Substantial
evidence means "such relevant evidence as a reasonable mind
might accept as adequate to support a conclusion." *Plummer v.
Apfel*, 186 F.3d 422, 427 (3d Cir. 1999) (quoting *Ventura v.
Shalala*, 55 F.3d 900, 901 (3d Cir. 1995)). Substantial evidence
is more than a mere scintilla of evidence but less than a
preponderance. *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir.
1988). If the Commissioner's decision is supported by
substantial evidence it must be affirmed. 42 U.S.C. § 405(g).

A single piece of evidence is not substantial evidence if
the Commissioner ignores countervailing evidence or fails to
resolve a conflict created by the evidence. *Mason v. Shalala*,
994 F.2d 1058, 1064 (3d Cir. 1993). However, in an adequately
developed factual record, substantial evidence may be
"something less than the weight of the evidence, and the
possibility of drawing two inconsistent conclusions from the
evidence does not prevent [the decision] from being supported
by substantial evidence." *Consolo v. Federal Maritime Comm'n*,
383 U.S. 607, 620 (1966).

In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole. *Smith v. Califano*, 637 F.2d 968, 970 (3d Cir. 1981).

The Commissioner has promulgated regulations creating a five-step process to determine if a claimant is disabled. The Commissioner must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant's impairment prevents the claimant from doing past relevant work; and, (5) whether the claimant's impairment prevents the claimant from doing any other work. *See* 20 C.F.R. §404.1520 and 20 C.F.R. §416.920.

The disability determination involves shifting burdens of proof. The initial burden rests with the claimant to demonstrate that she is unable to engage in her past relevant work. If the claimant satisfies this burden, then the Commissioner must show that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform, *Mason, supra at* 1064.

In this case, the ALJ determined that the plaintiff had not engaged in substantial gainful activity since the alleged onset date, that she has impairments that are severe, that her

impairments do not meet or equal any listed impairments, and
that she has no past relevant work experience. The ALJ further
determined that the plaintiff has the residual functional
capacity to perform the jobs identified by the vocational
expert, such as ticket collector, self-service cashier,
telemarketer and hand sorter. (Tr. 26.) On the basis of these
findings, the ALJ found the plaintiff not to be disabled.
(Tr. 28.)

The ALJ found that the plaintiff's medically determinable
impairments, namely, "status post approximately fifteen (15)
abdominal surgeries" and "degenerative changes in her lumbar
spine" (Tr. 23)are severe but not severe enough to meet or
equal a listed impairment. (Tr. 27.)

The ALJ stated that he had considered the plaintiff's
musculoskeletal condition under listing 1.04 (Disorders of the
Spine) and her complaints of abdominal pain under listing 5.00
(Digestive System) according to the regulations. Additionally,
the ALJ considered the plaintiff's complaints of asthma and
anxiety and found them to be not severe because there was "no
evidence of shortness of breath or coughing despite the fact
that claimant continues to smoke two packs of cigarettes a day"
and the plaintiff admitted that her asthma was stable. The ALJ
found that the plaintiff's anxiety is not a severe impairment
because the plaintiff was not receiving formal treatment for

this condition, except for anti-anxiety medication prescribed by her family physician. (Tr. 23.)

### 1-   Whether the administrative law judge (ALJ) erroneously rejected medical evidence without supporting contrary competent evidence.

The ALJ erroneously rejected competent medical evidence without offering a supporting contrary medical opinion. The ALJ rejected Dr. Conly's opinion, including his residual functional capacity assessment because the plaintiff had testified that she takes care of her seven year old grandson.  The ALJ stated that her self-acknowledged level of activity was higher than the one determined by Dr. Conly.  (Tr. 25).  The ALJ also based his rejection of Dr. Conly's opinion in the results of the June 23, 2003, MRI which revealed "minimal spondylosis" and disc bulging and degeneration on the plaintiff's lumbar spine. (Tr. 25.)

The ALJ found that the plaintiff has the capacity to lift and carry objects weighing two to three pounds frequently and ten pounds occasionally; sit for eight hours per day with the option to alternate between a sitting and a standing position every thirty to sixty minutes; and stand/walk for twenty to thirty minutes at a time up to a cumulative three to four hours.

14

The ALJ explained that these findings are "consistent with the medical evidence including diagnostic testing and measurable findings in clinical examination." (Tr. 26.) However, the ALJ did not specify which medical evidence is consistent with his findings, nor does he indicate the process of fact finding used to draw inferences from the medical records.

An ALJ is not required to provide a comprehensive explanation to support his acceptance or rejection of evidence. In most cases, a sentence or short paragraph will suffice. (*See Davis v. Comm'r of Soc. Sec.,* 105 Fed. Appx. 319 (3d Cir. 2004). However, the Commissioner's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).

Conflicts in the evidence must be resolved and the Commissioner must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. *Id*. at 706-707. This is necessary in order to facilitate review of the Commissioner's decision under the substantial evidence standard. Id.

In the present case, the ALJ failed to address the basis for his residual functional capacity determination. The state agency residual functional capacity evaluation, which is the

only competent opinion that can be seen to contradict Dr.
Conly's residual functional capacity opinion, is not mentioned
in the ALJ's decision.

As stated above, the Commissioner's decisions are reviewed
by application of a substantial evidence standard and an ALJ's
assessment of the evidence is entitled to substantial
deference. However, "[t]he search for substantial evidence is a
qualitative exercise without which our review of social
security disability cases ceases to be deferential and becomes
instead a sham." [*Calcek v. Comm'r of Soc. Sec.,* 2003 WL
21911069, (M.D. Pa. 2003), citing *Kent v. Schweiker*, 710 F. 2d
110, 114 (3d Cir. 1983)].

An ALJ may not make speculative inferences or reject a
physician's opinion on the basis of the ALJ's credibility
judgments or lay opinion. Evidence is not substantial "if it is
overwhelmed by other evidence -- particularly certain types of
evidence (e.g., that offered by treating physicians) -- or if
it really constitutes not evidence but mere conclusion." *Dorf
v. Bowen*, 794 F. 2d 896, 901 (3d Cir. 1986).

The Commissioner argues that the ALJ's residual functional
capacity determination was in accordance with the state agency
physician's findings. (Doc.12, p.9).  But as already noted, the
ALJ did not cite those findings nor specify which medical

assessment he relied on when he rejected Dr. Conly's opinion.
The only reasons given by the ALJ are that the plaintiff is
able to care for her grandson and that the MRI of the lumbar
spine shows that the plaintiff has "only minimal spondylosis
and disc bulging."  There is no medical opinion cited that
would contradict Dr. Conly's residual functional capacity
assessment. Dr. Conley had been a treating physician to the
plaintiff.  The ALJ's determination is erroneous.

The ALJ does not establish that he has a basis to know
whether or not the medical conditions revealed in the MRI could
cause symptoms of the intensity alleged by the plaintiff. An
ALJ's interpretation of an MRI does not constitute substantial
medical evidence. *See Morales v. Apfel*, 225 F. 3d 310 (3d cir.
2000) (holding that an ALJ is not allowed to "play doctor" and
may not make speculative inferences from medical reports).

The Third Circuit has consistently held that the opinion
of a treating physician must be given greater weight than that
of a medical advisor or other non examining physician if the
opinion is supported and not inconsistent with other
substantial evidence on the record. *Dorf, supra.*

The cardinal rule is that the ALJ must accord a treating
physician's diagnoses and medical opinions great weight,
especially when as in this case, the treating physician's

17

opinion reflects expert judgment based on continuing
observation of the patient's condition over a prolonged period
of time. *Morales, supra* at 320.

Assuming, as the Commissioner argues, that the ALJ relied
on the state agency's opinion and that Dr. Conly was not acting
as a treating physician, the ALJ was nonetheless required to
explain his reasons for adopting the opinion of a non-examining
physician over Dr. Conly's opinion. Furthermore, even though
Dr. Conley here took on the role of a consultant to the agency,
that did not negate the fact that he was a "treating physician"
given the doctor-patient relationship he and the plaintiff had
in the past.

Unlike the state agency physician, Dr. Conly personally
examined the plaintiff before issuing his opinion and he was
familiar with the plaintiff's medical condition on the basis of
multiple examinations over time.  Of course, there would have
been no reason for the doctor not to have considered in his
consultative capacity his own mere extensive knowledge of the
plaintiff's condition.  The Commissioner selected Dr. Conley to
evaluate the plaintiff's residual functional capacity.  The
plaintiff may not be seen thereby to lose the value to her of
having residual functional capacity and medical history and
condition evidence from her treating physician presented to and
considered by the ALJ.

Even discounting Dr. Conly's independent role and status as the plaintiff's treating physician, Dr. Conly supported his residual functional capacity opinion with a recitation of his examination procedures and an evaluation of the plaintiff's range of motion, which he illustrated in a range of motion chart.  (Tr. 143-148).  Dr. Conly further opined that the plaintiff's back pain prevented the performance of the SLR test.[4]

As the Commissioner concedes, the regulations afford great weight to a medical opinion that is based on a clinical test or observations and that is well supported by medically acceptable diagnostic techniques. *See* 20 C.F.R. § 416.927 (d)(2), (3). (Doc.12, p.8).  The Commissioner argues that the ALJ had several valid reasons for rejecting Dr. Conly's opinion and cites to several portions of the record that may be seen to support the ALJ's findings. (Doc.12, p.8-10).  However, the ALJ did not cite nor rely upon this evidence.  It is the ALJ's responsibility to explicitly provide reasons for his decisions. *See Fargnoli v. Halter*, 247 F.3d 34,42 (3d Cir. 2001).

---

[4] The SLR is designed to detect nerve root pressure, tension, or irritation of the sciatic nerve. With the knee fully extended, the physician raises the involved leg from the examining table. A positive SLR test would require reproduction of pain at an elevation of less than 60 degrees. A positive SLR would be the single most important sign of nerve root pressure produced by disc herniation. Andersson and McNeil, Lumbar Spine Syndromes pp.78-79 (Springer-Verlag Wein,1989).

The ALJ did not state a valid reason for rejecting
Dr. Conly's assessment of the plaintiff's residual functional
capacity.  As stated above, if the Commissioner  ignores
countervailing evidence or fails to resolve conflicts created
by the evidence we cannot conclude that such decision is
supported by substantial evidence. *Mason, supra* at 1064.  It is
not the duty of this court to resolve conflicts in the medical
evidence. *Richardson v. Perales*, 402 U.S. 389, 399 (1971).

In light of the above, the ALJ's decision as to the
plaintiff's residual functional capacity is not supported by
substantial evidence on the record because the ALJ rejected
Dr. Conly's residual functional capacity assessment and
assigned the plaintiff a different residual functional capacity
without providing a contrary medical opinion to support his
determination.

    **2-  Whether the ALJ erroneously closed the plaintiff's
file without obtaining relevant medical evidence.**

The ALJ, after stating that he would, did not obtain the
medical records of the plaintiff that had been submitted as
part of the plaintiff's previous application for benefits.
The ALJ stated that he had requested the files but that the
files could not be located. The ALJ decided that, "given the
long delay" the medical information contained on those files
was deemed "not essential." (Tr. 22.)  The ALJ also stated that

the earlier records were irrelevant.  The ALJ further explained
that the medical information contained on those files date back
to 1995 and that the plaintiff had returned to work after her
last surgery in 1999,therefore there was no basis under 20
C.F.R. § 416.1488-1489[5] to reopen the plaintiff's 1997

---

[5]

§ 416.1488 Conditions for reopening.
A determination, revised determination, decision, or
revised decision may be reopened--

(a) Within 12 months of the date of the notice of the
initial determination, for any reason;

(b) Within two years of the date of the notice of the
initial determination if we find good cause, as defined in
§ 416.1489, to reopen the case; or

(c) At any time if it was obtained by fraud or similar
fault. In determining whether a determination or decision
was obtained by fraud or similar fault, we will take into
account any physical, mental, educational, or linguistic
limitations (including any lack of facility with the
English language) which you may have had at the time.

§ 416.1489 Good cause for reopening.

(a) We will find that there is good cause to reopen a
determination or decision if--

(1) New and material evidence is furnished;

(2) A clerical error was made; or

(3) The evidence that was considered in making the
determination or decision clearly shows on its face that an
error was made.

(b) We will not find good cause to reopen your case if the
only reason for reopening is a change of legal
interpretation or administrative ruling upon which the
determination or decision was made.

21

application which had been denied at the reconsideration level
and which the plaintiff did not appeal. (Tr. 21, 22.)

The ALJ's implication that the purpose for obtaining the
records was for a reconsideration, and the correlative
reference to 20 C.F.R. § 416.1488-1489, is misplaced.  The
records had potential relevance to the current claim and that
was the purpose for obtaining them.  Further, to the extent
that the ruling was that the earlier records had no relevance
to this claim, that is not shown to be true.  The plaintiff did
not motion to have her prior application reopened, she simply
requested the ALJ to consider the medical information contained
in her prior application for benefits because she considered
said records to be "very important."  (Tr. 38.)  The ALJ had no
knowledge of the contents of the medical records contained in
the plaintiff's prior file; thus, his conclusion that said
records were irrelevant and "not essential" is arbitrary.

It was error for the ALJ to close the record without at
least having provided the plaintiff with an opportunity to
submit all of the medical evidence that she wanted the ALJ to
consider in her case. The plaintiff had offered to request the
documents from her doctors to facilitate the ALJ's decision
making process.  (Tr. 70.)  The ALJ assured the plaintiff that
he would request the record and that the medical information
contained in her previous application would be made part of the

22

record and would be considered in making a final determina-
tion.

### 3- __Whether the ALJ's rejection of the plaintiff's testimony regarding her subjective symptoms is supported by substantial evidence.__

Next, we examine the ALJ's rejection of the plaintiff's
subjective symptoms. The ALJ's rejection of the plaintiff's
testimony regarding her subjective complaints of pain is not
supported by substantial evidence.  The ALJ based his
determination that the plaintiff was not credible in reporting
her subjective symptoms upon the inference that he drew that
the plaintiff is able to care for her grandson and perform some
household duties (TR. 25-26.)  The ALJ found that the
plaintiff's musculo-skeletal impairments and her abdominal pain
do not meet the required listings because the plaintiff is her
grandson's primary care giver (Tr. 23.)  On that same basis,
the ALJ rejected Dr. Conly's opinion (Tr. 25).

According to the plaintiff, her level of activity in her
grandchild's care is limited to playing table games and reading
while the plaintiff is seated or laying down on her couch. She
stated that she is only able to cook light meals for him such
as sandwiches and soup and can cook more complicated meals only
once a week.

The ALJ does not more specifically compare and contrast the plaintiff's statements about her symptoms and those about her activities of daily living and her ability to care for her seven year old grandchild.  An understandable credibility analysis is not stated.  A claimant's credibility must be carefully considered and a rejection of credibility may not be used by the ALJ as a substitute for a careful analysis of the evidence.  *See Hippensteel v. Social Security Administration*, 302 F. Supp. 2d 382 (M.D.Pa. 2001).

The ALJ rejected the plaintiff's assertions that she has disabling abdominal pain because, although a CAT scan of the plaintiff's abdomen and pelvis revealed a cystic or hypodense mass in the pancreas, a subsequent scan showed that the cysts or adenomas were stable despite the uncinate process and a "somewhat prominent head" in the pancreas. Since no medical source has expressed an opinion on these findings, the ALJ's assumption of the role of a medical expert should be discounted.

The ALJ did not address in his decision the testimony at the hearing of the plaintiff's sister, Ms. Horning.  The Third Circuit held in *Burnett v. Commissioner of Soc. Sec. Admin.*, 220 F.3d 112, 122 (3d. Cir. 2000), that where an ALJ makes a credibility determination concerning the plaintiff, the ALJ must also address the testimony of additional witnesses who are

offered to bolster or corroborate the plaintiff's own
testimony.

Even if there was a sound basis to reject or to afford
little weight to the testimony, the ALJ was required to at
least acknowledge that such testimony was considered. *[See
Burnett supra* at 122, reaffirming the Court's holding in *Van
Horn v.* <u>Schweiker</u>, 717 F. 2d 871 (3d Cir. 1983) (a case may be
remanded when an ALJ fails to address the testimony of the
plaintiff's lay witnesses)]. In this case, as in *Van Horn*,
*supra*, the ALJ's failure to address Ms. Horning's testimony is
aggravated because there is a physician's opinion deeming the
plaintiff unable to engage in substantial gainful activity.

**4- <u>Whether the hypothetical question submitted to the
vocational expert (VE) is supported by substantial
evidence in the record.</u>**

We consider the correct framing of the issue the plaintiff
is raising to be whether the hypothetical person for whom the
vocational expert disclosed substantial gainful activity (jobs)
that such a hypothetical person can perform, when the ALJ's
decision depends upon that vocational testimony, has
substantially the same medical and vocational characteristics
as substantial evidence in the record shows the plaintiff to
have.  The vocational expert declared there to be substantial
gainful activity that could be performed by an individual able
to lift and carry up to ten pounds occasionally and two to

three pounds frequently, with a sit/stand option of every
thirty to sixty minutes and the ability to sustain (unskilled)
work for near the equivalent of the full work day. (Tr. 65).
The ALJ further limited the hypothetical person to unskilled
jobs. Social Security Ruling (SSR).[6]

The residual functional capacity assigned to the
hypothetical individual in the question posed to the vocational
expert is not consistent with a residual functional capacity of
the plaintiff based upon the record, for the reasons stated
above, particularly the fact of Dr. Conley's opinion.  Thus,
the ALJ's reliance on the vocational expert's opinion that the
plaintiff is able to perform the jobs identified by the
vocational expert is not supported by substantial evidence.
(*See Morales, supra* at 319, holding in part that an ALJ's
reliance in the opinion of the vocational expert is not
supported by substantial evidence if the ALJ improperly
supplanted a physician's opinion with his own observations and

---

[6]
    Social Security rulings are the SSA's interpretation of the
statute it administers. SSRs do not have the force of law,
however, once published, they are binding on all components of the
SSA. *Newell v. Comm'r of Soc. Sec.,* 347 F. 3d 541, 548 (3d Cir.
2003).  83-12 recognizes that unskilled jobs are particularly
structured so that a person cannot sit or stand at will and that
if an individual is incapable to sit or stand for extended periods
of time, it is necessary to "clarify the implications for the
occupational base."  *See* http://www.ssa.gov/OP_Home/rulings/di/02/SSR83-12-di-
02.html.

speculations when he posed the hypothetical question to the vocational expert).

We have already found the ALJ's rejection of Dr. Conley's residual functional capacity determination to have been erroneous.  The Commissioner's determination is not supported by substantial evidence on the record.  It is recommended that the case be remanded to the Commissioner.


                              */s/ J. Andrew Smyser*
                              J. Andrew Smyser
                              Magistrate Judge
Dated:  July 21, 2005.